Ward and another *against* Armstrong and another.    *Sunbury.*

In Error.

*Monday,*
*June 9.*

THIS was a writ of error to the Common Pleas of *Mifflin* county, on which a bill of exceptions was returned with the record.

    *Burnside* and *Huston*, for the plaintiffs in error.

    *Anderson* and *Watts*, contra.

A credit on the books of the receiver general could not be applied on the 31st December, 1794, to pay for a warrant of that date for unimproved land, founded on an application entered on the 19th of the same month.

Tilghman C. J. *George Ward* and others, the plaintiffs in error in this ejectment, were defendants below, and in order to support their title, they gave in evidence a certificate from the receiver general, shewing that *Samuel Martin* had a credit on his books for 5*l.* which credit was, on the 31st *December*, 1794, applied to the payment of a warrant for 150 acres of land granted to the said *Martin*, on the same day, founded on an application entered the 19th of the same month. The defendants then offered in evidence a warrant to the said *Martin*, for 150 acres of *unimproved* land, dated 31st *December*, 1794, which was objected to by the counsel for the plaintiffs, and rejected by the Court. A bill of excep-

1817.

WARD
and another
v.
ARMSTRONG
and another.

tions was taken, and whether the evidence was properly rejected, is the question. This depends on the construction of several acts of assembly. By the act of 29th *March*, 1792, the owners of unsatisfied land warrants, issued after the 1st *April*, 1784, were entitled to a credit, in the books of the receiver general, to be applied by the said persons, their heirs or assigns, to the payment of debts due to the commonwealth, or thereafter to become due, for the purchase of any lands within the state, together with interest on the said credits, from the time of the original payment for which credit was given, to the time of such credit being applied for and entered. By an act passed the 3d *April*, 1792, sect. 15. 3 *Smith's Laws*, 75. holders of unsatisfied warrants were permitted to locate the quantity of land for which such warrants were granted, in any district of vacant and unappropriated land within the commonwealth. A supplement to the act of 29th *March*, 1792, was made on the 6th *March*, 1793, by which it was enacted, that unless the persons entitled to credit by the original act, should apply for, and procure the credit to be entered in the books of the receiver general, before the 1st *January*, 1795, they should be barred from all benefit under the original act, and their claims should be forfeited and cancelled ; and, moreover, where the sums of money for which credit was entered, had been paid to the receiver general, prior to the passing of the said supplement, interest was to be allowed from the time of making the said payments to the day of the passing of the said supplement, and no longer. By an act passed 22d *April*, 1794, 3 *Smith's Laws*, 184, "applications might be received, and warrants issued, until 1st *January*, 1795, in favour of persons to whom balances were due in the land office, on unsatisfied warrants, issued before the 29th *March*, 1792, for such quantity of land respectively, as might be sufficient to discharge such balances." After this came the act of 22d *September*, 1794, by the 1st section of which it was enacted, that from and after the passing of the same, "no applications should be received at the land office, for any lands within the commonwealth, except for such lands whereon a settlement had been or should thereafter be made, grain raised, and a person or persons residing thereon." By the second section, all applications entered since the 1st *April*, 1784, for which the purchase money had not been paid, were made void from and after the passing of the act, " provided nevertheless, that all

persons should have the benefit of the aforesaid act of 29th *March*, 1792, agreeably to the provisions contained in a supplement to the said act, passed 6th *March*, 1793." Now I take the plain import of the act of 22d *September*, 1794, on which principally this cause turns, to be, 1st. That no application should be received, after its passage, for any unsettled land; and 2d. That in order to preserve the faith of the Commonwealth to those persons who held unsatisfied warrants for which no credit had been entered in the books of the receiver general, they should have time to procure such credit to be entered, until the 1st *January*, 1795, in conformity with the assurance given them by the supplement of the 6th *March*, 1793 ; and such credits might be applied to the payment of the purchase money of lands for which applications had been entered prior to the 22d *September*, 1794. The proviso is not applicable to the 1st section, and therefore can neither controul nor qualify it. It applies solely to that part of the 2d section which declares that all applications entered since the 1st *April*, 1784, for which the purchase money had not been paid, should be void ; and the effect of the proviso is, that persons who had entered applications for unsettled lands, prior to the 22d *September*, 1794, might proceed to take out warrants, and pay for them by credits entered on the books of the receiver general, or to be entered at any time prior to the 1st *January*, 1795. The supplement, passed 6th *March*, 1793, did not give permission to enter applications for land until 1st *January*, 1795, but only to procure a credit to be entered in the books of the receiver general, until that time. Upon the whole, the prohibition in the 1st section of the act of 22d *September*, 1794, to enter applications for unsettled lands, is plain and peremptory, and there is nothing in the subsequent part of the act, to qualify it in favour of persons who obtained credit on the books of the receiver general. I am, therefore, of opinion, that the Court of Common Pleas very properly rejected the warrant to *Samuel Martin*, which was issued contrary to the provision of the act of 22d *Sept.* 1794, being founded on an application entered after the passing of that act.

YEATES J. before whom the case was argued, was of the same opinion ; but died before the opinion was delivered.

GIBSON J. concurred.

Judgment affirmed.